**CITY OF AUSTIN, Appellant,**

v.

**Arturo CASIRAGHI, et al., Appellees.**

**No. 13532.**

Court of Appeals of Texas, Austin.

June 29, 1983.

Rehearing Denied Sept. 7, 1983.

Jerry L. Harris, City Atty., James R. Riggs, Asst. City Atty., Austin, for appellant.

Robert Norris, Jones & Norris, Austin, for appellees.

Before PHILLIPS, C.J., and POWERS and GAMMAGE, JJ.

## ON MOTION FOR REHEARING

POWERS, Justice.

Our earlier opinion of April 6, 1983, is withdrawn and the following is substituted in its stead.

The City of Austin, Texas filed in the county court of Travis County a petition in eminent domain to acquire, for public use, the entirety of three lots owned by Arturo Casiraghi and his wife, Louisa. The lots were within the municipal limits. The principal issue on appeal concerns the legality of the money damages awarded by the trial court for the property. We will reform the judgment below and affirm it as reformed.

The record reflects that the Casiraghis operated upon the three lots a well-known restaurant, utilizing for that purpose one of the buildings on the lots. They lived in another building, situated behind the restaurant, and rented to another person a third building located on the property.

The City's petition described the property sought to be acquired as the whole of the three lots and the improvements thereon. The county court appointed special commissioners "to assess the damages occasioned by the condemnation of such tract of land . . . ." After an evidentiary hearing, wherein the commissioners heard the evidence and argument of the parties, the commissioners determined the market value of the land to be $48,500.00 and found that the Casiraghis "will be damaged in that amount . . . ." Tex.Rev.Civ.Stat.Ann. art. 3265 (1968). The City deposited in the registry of the court the sum of $48,500.00 and entered into possession of the property. Tex.Rev.Civ.Stat.Ann. art. 3268 (1968). The Casiraghis withdrew the $48,500.00. The parties filed objections to the award of

the special commissioners and the proceedings were transferred to a county court at law for trial de novo. Tex.Rev.Civ.Stat. Ann. art. 1969a–2 (1964).

The Casiraghis objected to the commissioners' decision and award on the general grounds that the City lacked the right and power to take their property, that the taking was contrary to "the laws of the State of Texas" and the federal and state constitutions, and that the sum awarded by the commissioners "as compensation and/or damages . . . for such taking is wholly insufficient."

In reply to requests for admissions subsequently served them by the City, however, the Casiraghis declared that they no longer contested the City's power to take the property by eminent domain, that they were each over age 65 at the time of the decision of the special commissioners, that the property was zoned residential from 1952 until the time of the award of the special commissioners, and that they had never obtained a variance or special-use permit respecting their restaurant operations on the property. Before trial commenced, the parties stipulated that the market value of the land and improvements described in the City's petition was $55,000.00.

Over the City's objection, the trial court ordered the trial to proceed on the issue of compensation. During the trial, the Casiraghis introduced over the City's objections expert opinion testimony to the effect that their restaurant was more profitable than the ordinary restaurant owing to its unique location and character and its "unusual reputation." One such expert witness testified that the restaurant "could not be moved without damage, . . . probably material damage," and that it is always "dangerous to move" an established "service-type business." The relationship between the Casiraghis' restaurant and their patrons was even described by another witness as being a "kind of a symbiotic or ecological [sic] relationship," and there was further testimony that the restaurant could not be moved to another place in the area "with-

out a material and substantial damage to the business interest" of the restaurant. Extensive evidence of the restaurant's profitability to the Casiraghis was introduced to prove the value of their business.

At the conclusion of the evidence, the trial court submitted to the jury only two special issues, which were answered by the jury as indicated:

Do you find from a preponderance of the evidence that the Defendants' business was taken, destroyed or materially damaged by the City of Austin on October 8, 1970? ... Answer: Yes.

From a preponderance of the evidence, and exclusive of the land and buildings located thereon, what do you find was the market value of Defendants' business that was taken, destroyed or materially damaged by the City of Austin on October 8, 1970? ... Answer: $130,000.00.

The trial court judgment, consistent with the jury's verdict coupled with the stipulation of the parties as to the value of the land and improvements, awarded the Casiraghis the sum of $136,500.00, being the net sum obtained when the stipulated value of the land and improvements ($55,000.00) is added to the value of the restaurant business found by the jury ($130,000.00), less the sum previously paid by the City into the registry of the court ($48,500.00).

After the Casiraghis stipulated the market value of the three lots with the improvements thereon, they expressly sought to establish the value of their restaurant business *independently* of the value of the land upon which it was operated, and were permitted by the trial court to introduce evidence to that end. The trial court judgment *establishes separate awards* representing the value of the business and the value of the real property.

The City's petition in eminent domain described only the three lots as the property to be taken but the Casiraghis contend that the unique location and condition of these lots was the primary reason for the success of their restaurant and, accordingly, the restaurant could not practically be relocated elsewhere. Thus, they contend, the City's

taking of the three lots destroyed their business, for which the constitutions of the State of Texas and the United States require they be paid just compensation.

■ In eminent domain proceedings the property owner is given a single opportunity to recover damages for the taking of his property for public use. The procedure is governed by statute and the statutory requirements are to be strictly followed. *Coastal Industrial Water Authority v. Celanese Corporation of America,* 592 S.W.2d 597, 599 (Tex.1979); *City of Bryan v. Moehlman,* 155 Tex. 45, 282 S.W.2d 687, 690 (1955). The condemnor's statement must "describe the land sought to be condemned," in addition to other matters specified in Tex.Rev.Civ.Stat.Ann. art. 3264 (1968). The City's petition in eminent domain contained a legal description of the three lots as the sole property to be acquired as a result of the proceeding, and was thus sufficient to confer upon the trial court jurisdiction to award the money damages allowed under the eminent domain statutes for the taking of property *pursuant to those statutes.* Moreover, if, as the Casiraghis claim, their cause of action for the destruction of their restaurant business is a constitutionally-based claim independent of the eminent domain statutes and the taking of the three lots thereunder, they were no doubt entitled to bring an independent cause of action to recover for their injury in that regard. Tex. Const.Ann. art. I, § 17 (1955).

■ Nevertheless, the inherent ambiguity of the Casiraghis' position is illuminated by the fact that they filed in the present cause no pleading whereby they set forth any claim for money damages attributable to the destruction of their restaurant business as a right of action independent of their right to recover the market value of the three lots. *Cf., Hart Bros. v. Dallas County,* 279 S.W. 1111, 1111–12 (Tex.Comm. App.1926, jdgmt adopted); *City of La Grange v. Pieratt,* 142 Tex. 23, 175 S.W.2d 243, 244 (1943). If their theory is assumed to be correct, that is, if the value of their

business may be ascertained and recovered as an independent element of damages in a separate constitutionally-based right of action, where the City sought neither title nor possession of that business in its pleading, then the separate cause of action was one in inverse condemnation, the essence of which is that an owner's property has been damaged or taken for a public use without the previous institution of the statutory proceedings in eminent domain. Tex. Const. Ann. art. I, § 17; *City of Abilene v. Burk Royalty Company,* 470 S.W.2d 643, 646 (Tex.1971). The Casiraghis alleged no such separate cause of action reflecting that claim; and the judgment of the trial court, which grants them as an independent award of damages a sum representing the jury's finding of the market value of their business, does not, and could not, conform to the pleadings in the cause. We must therefore sustain the City's point of error that the award of the separate sum is not supported by the pleadings. *Queen City Land Co. v. State,* 601 S.W.2d 527, 528 (Tex.Civ.App.1980, writ ref'd n.r.e.) (award of fee simple title to State in eminent domain proceeding is error where petition in condemnation sought only an easement).

■ We turn then to the converse of the foregoing proposition. If the Casiraghis were not required to plead an independent cause of action in inverse condemnation,

that is, if the injury to their business be viewed merely as a consequential injury associated with the taking of the three lots, compensable *under the eminent domain statutes,* there was error still because the award of the value of the business, as found by the jury and as a separate item of damages independent of the market value of the three lots, was not an award of damages authorized by the eminent domain statutes.[1]

■ Under the eminent domain statutes various evidentiary matters may be considered in estimating the market value of land taken, or in estimating the damages sustained by the owner in a temporary or partial taking; nevertheless, these evidentiary matters may only be considered in arriving at the ultimate issues of the market value of the land taken and the diminution in the market value of any remainder. They do not represent sums which may be awarded *independently of the realty itself. State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 197–98 (1936) (error to instruct the jury in a partial-taking case that they may consider special items of damages pleaded by the owner as affecting the remainder); *Milam County v. Akers,* 181 S.W.2d 719, 722 (Tex.Civ.App.1944, writ ref'd w.o.m.) (special damages to a landowner's cattle business was a proper subject of pleading and

1. The eminent domain statutes provide in part as follows:

Art. 3264. Procedure

The exercise of the right of eminent domain shall in all cases be governed by the following rules:

1. When real estate is desired for public use ... the party desiring to condemn the property after having failed to agree with the owner of the land on the amount of damages shall file a statement in writing with the county judge of the county in which the land ... is situated. It shall describe the land sought to be condemned ... and that the plaintiff and the owner have been unable to agree upon the value of the land or the damages....

Art. 3265. Rule of Damages

1. The commissioners shall hear evidence as to the value of the property sought to be condemned and as to the damages which will be sustained by the owner, if any, by reason of such condemnation ..., and according to

this rule shall assess the actual damages that will accrue to the owner by such condemnation.

2. When the whole of a tract or parcel of a person's real estate is condemned, the damages to which he shall be entitled *shall be the market value of the property* in the market where it is located at the time of the hearing.

3. When only a portion of a tract or parcel of a person's real estate is condemned, the commissioners shall *estimate the injuries sustained* and the benefits received thereby by the owner; whether the remaining portion is increased or diminished in value by reason of such condemnation, and the extent of such increase or diminution and *shall assess the damages accordingly.*

\* \* \* \* \* \*

Art. 3271. Property vested by judgment

Whenever acquired as hereinbefore provided, the judgment of the court shall vest such right in the company acquiring the same. (emphasis added throughout).

proof in a partial-taking case where "[t]he injury was not asserted as a separate item of damage but only as affecting the market value of the farm for the uses to which it was adapted and being put."); *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176, 179 (1951) (holding the trial court did not err in a partial-taking case when it excluded evidence showing a reduction in the value of the landowner's business, where the owner's request for a special issue, "submitting the question of the depreciated market value of his grocery and liquor business, exclusive of the land and improvements thereon," demonstrated unquestionably that the purpose of the evidence "was to establish a separate and independent item of recovery.")

Moreover, the Casiraghis were not entitled to an award under the eminent domain statutes because the whole of their property, upon which the business was operated, was taken by the City. *Herndon v. Housing Authority of City of Dallas,* 261 S.W.2d 221, 222–24 (Tex.Civ.App.1953, writ ref'd) (evidence of the profitability of the landowner's business was properly excluded by the trial court, even though offered as evidence of the market value of the real estate, as opposed to a separate item of damage, where the whole of the landowner's property was taken by the condemnor.)

Finally, they were not entitled to an award under the eminent domain statutes because the evidence shows that the value of the restaurant represented only good will or its value as a going concern. *State v. Zaruba,* 418 S.W.2d 499, 502–03 (Tex.1967) (testimony showing the impairment of the owner's business would not support the jury verdict in a condemnation case seeking an easement where the witness included the value of the business as a going concern, or good will, in valuing the whole of the property before the easement was taken).

We find in the trial court's charge to the jury in the present case, and in the final judgment, that the value of the Casiraghis' restaurant was unquestionably treated as an independent and additional element of damages distinct from the value of the real property, in a case where the whole of the Casiraghis' real property was taken. We therefore sustain the City's points of error that the trial court erred in overruling its motion for instructed verdict in this regard, in admitting evidence of the market value of the business, and in submitting to the jury a charge whereby the value of the restaurant business was established as a basis for an award independent of the award for the value of the land.

We need not consider the City's remaining points of error; we must, however, address several contentions made in the dissenting opinion for the violence they do to the record in the case.

The dissent stumbles at the threshold because it refuses to acknowledge any distinction between a statutory cause of action in condemnation, initiated by the condemning authority and conducted under the rule of damages provided by statute, and the fundamentally different cause of action in inverse condemnation, based upon Tex. Const. Ann. art. I, § 17, initiated by a property owner to recover compensatory damages for injury done to his property by the act of an entity having, but not then exercising, the power of eminent domain. Nor does the dissent state its contentions with any precision or clarity, preferring instead to scramble the two causes of action with several generalized propositions of law and misstatements of the record in this appeal.

■ In condemnation actions conducted under the statutes which regulate such actions and establish the rule of damages therein, no recovery is allowed for the value of a business conducted on the real property sought to be acquired by the condemning authority, when the whole of the owner's land is to be taken; however, the owner is not precluded in such cases from introducing evidence to the effect that the market value of his real property is greater because it is uniquely suited to the profitable business conducted thereon.

■ An ordinary condemnation action is the sole cause of action reflected by the pleadings in the present case, which began

as an administrative proceeding under the eminent domain statutes, with a hearing before special commissioners and their fixing of the Casiraghis' damages under the statutory rule provided by paragraph 2 of art. 3265, that being the applicable rule of damages because the whole of the Casiraghis tract was sought in the City's written statement, filed under paragraph 2 of art. 3264. Having stipulated the market value of the real property and improvements, the only sum authorized to be recovered under paragraph 2 of art. 3265, the Casiraghis were not entitled in that statutory proceeding to recover any other sums. This is so, despite the dissent's protestation to the contrary, for the several reasons mentioned in the earlier part of this opinion, including the rule that no sum may be awarded in a condemnation action independently of the market value of the realty itself, whether the whole of the owner's land is taken, Herndon v. Housing Authority of City of Dallas, supra, or a part only is taken. State v. Carpenter, supra; City of Dallas v. Priolo, supra.

■ It being plain that the Casiraghis were entitled to recover in the condemnation action, initiated by the City, no sum in addition to the market value of the real property, stipulated by them to be the sum of $55,000.00, the question necessarily arises whether they brought against the City a separate action, to recover an additional sum independent of the market value of the realty, on a theory that an act of the City had destroyed their restaurant business, an article of "property." We have held that they did not bring such a cause of action because the pleadings in the record show that they filed in the case only the objection authorized by art. 3266, paragraph 6. That objection addresses only the result reached by the special commissioners in the administrative proceeding, and therefore it may only constitute an objection to the right and power of the City to take the property under the eminent domain statutes; and an objection to the commissioners' determination of the market value of the realty itself, which was the sole property sought to be acquired by the City's written statement

and the only article of property in reference to which the commissioners were authorized to fix a value under art. 3265.

The record is devoid of any pleading by the Casiraghis that implies a cause of action in inverse condemnation for the alleged destruction of their restaurant by an action taken by the City outside the regularly instituted and conducted condemnation proceedings. The assertion in the dissent that the Casiraghis did plead there was a "unique quality to their property" and that they did plead a cause of action in that regard is absolutely without support in the record.

■ But, the dissent argues, the City, for want of a challenge to the Casiraghis' "defective pleadings" and for want of an objection to the Casiraghis' evidence adduced at trial, consented to·try the issue of whether they were entitled to an independent and additional sum representing the value of their restaurant business as a going concern.

The dissent's theory presumes that some pleading by the Casiraghis placed the issue of additional compensation before the court, in a judicial proceeding, that is, following the award of the special commissioners. However, the sole pleading by the Casiraghis consisted of their objection to the award of the commissioners under the eminent domain statutes.

Contrary to the claim of the dissent, the Casiraghis did not ask in their objection "for all sums recoverable under both the federal and our State Constitution [sic]." Their objection contains only two grounds, separately stated: (1) the City had no right or power to take the "property in question," which was only the real property and improvements described in the City's written statement, and the taking was contrary to the laws of the State of Texas and the Constitutions of the United States and the State of Texas; and (2) "[t]he sum awarded by the Commissioners as compensation and/or damages to the Defendants for such taking is wholly insufficient." In their prayer, the Casiraghis requested, in the

event condemnation of their property was "allowed," that they "recover adequate compensation and/or damages for taking of their property."

There is nothing in the Casiraghis' objection to the commissioners' award, and no other pleading by them, whereby they sought to enlarge the issues beyond those required to be adjudicated under the statutory proceedings in eminent domain; and, more to the point of the present discussion, absolutely no pleading to which the City would have been required to object to prevent any such enlargement, specifically the award of an additional sum as compensatory damages in a cause of action for inverse condemnation.

Moreover, from the record on appeal it is obvious that the City objected to trying the alleged issue of additional compensation, over and above the stipulated market value of the real property and improvements, at every stage where objection was possible: by motion in limine before trial, by objection filed before the jury were seated to try the case, by motion for instructed verdict, by objection to the charge given the jury by the trial court, and by motion for judgment notwithstanding the verdict, all of which were made by the City in writing and expressly overruled by the trial court. In addition, the City specifically renewed its challenge to the Casiraghis' claim for the additional sum by objection to their evidence when it was tendered in the form of the Casiraghis' books of account pertaining to the restaurant operation, notwithstanding the trial court had made it abundantly clear that the issue of additional compensation would be tried despite the provisions of art. 3265 and the parties' previous stipulation that the market value of the real property and improvements was $55,000.00.

And to categorically refute the dissent's argument of trial by consent, the record reveals that the pleadings in the present cause have never, to this date, been amended or supplemented to allege a cause of action raising the issue of the Casiraghis'

entitlement to a sum in addition to the stipulated sum of $55,000.00, on a theory of inverse condemnation or any other theory, and some additional pleading was required to enlarge the scope of the case to permit the additional award *even if the issue had been tried by consent.* Tex.R.Civ.P.Ann. 67 (1979); *Bedgood v. Madalin,* 600 S.W.2d 773, 775–76 (Tex.1980). The dissent's assertion of trial by consent is thus contrary to the very theory itself.

We therefore reform the judgment of the court below to award the Casiraghis the sum of $6,500.00, which represents the stipulated market value of the real property and improvements, $55,000.00, less the sum of $48,500.00 previously paid by the City, together with interest thereon from October 8, 1970 to September 5, 1975, and thereafter, at the rate of nine per cent per annum until paid. As reformed, the judgment of the trial court is affirmed.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent.

This is a condemnation case where in addition to the "bricks and mortar" of their property, appellees have pleaded and proved that there was a unique quality to their property that was compensable. The jury agreed, hence the award in question.

The majority, in ignoring the jury verdict, asserts that the damages sought for the uniqueness of the property do not lie because they are independent and apart from the compensable value of the property, and further that appellees have not sufficiently pleaded these specific damages.

This simply is not so.

Our Courts in Texas have historically held that a person can recover for the uniqueness of his taken property as a component part of the property's total value. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 198 (1936); *McFadden v. Schill,* 84 Tex. 77, 19 S.W. 368, 370 (1892).[1] Our Courts have also universally held that a business is property and when taken by a government authority, the owner must be compensated.

1. The cited Supreme Court authority, and their progeny, state the controlling proposition that the fitness or adaptability of taken property for

a particular purpose or use is a component part of the compensable value of taken property, as

*City of LaGrange v. Pierrat,* 142 Tex. 23, 175 S.W.2d 243 (1943); *Hart Bros. v. Dallas County,* 279 S.W. 1111 (Tex.Comm.App. 1925, judgmt. adopted). It seems only quibbling to say that appellees can not now recover in this rare situation for the uniqueness of their business or that they have not properly sought these damages.

In the first place, in their objections to the award, appellees asked for all sums recoverable under both the federal and our State Constitution. U.S. Const. amend. V; Tex. Const. art. I, § 17. Additionally, appellant not only failed to timely and *properly* object to appellees' allegedly defective pleadings, but also to the introduction of evidence proving the value of and the existence of the uniqueness in question. Consequently, this point was tried by consent and may not now be complained of on appeal. Tex.R.Civ.P.Ann. 90 (Supp.1982); *Bednarz v. State,* 142 Tex. 138, 176 S.W.2d 562 (1943).

I would affirm the judgment of the trial court based upon the *uncontroverted* jury findings.[2]

fixed as the taken property's market value as determined by the jury.

**2.** I am not alone in my holding. *See Housing Authority of Saint Paul v. Naegele Outdoor Advertising Co.,* 282 N.W.2d 537 (Minn.1979); *Feigenbaum v. New Britain Housing Site De-velopment Agency,* 164 Conn. 254, 320 A.2d 824 (1973); *Gibson Estate v. State Highway Board,* 128 Vt. 47, 258 A.2d 810 (1969); *Bowers v. Fulton Co.,* 221 Ga. 731, 146 S.E.2d 884 (1966), to name but a few other jurisdictions who have passed upon this unique situation.